Rutland,
January,
1827.

PALMER CLEVELAND, appellee, *vs.* ERVIN HOPKINS, appellant.

One, not a relation of a supposed insane person, and without describing himself as the *friend* of
such person, represented the case to the probate court, and prayed for an inquisition. The court
issued an order of inquest, reciting therein that the application was by a *friend*, &c.—The select-
men and civil authority to whom the order was addressed, made return thereof adjudging the
suspected person *insane*, without giving him notice or personally examining him. The appli-
cant was thereupon appointed guardian, and took possession of the property and controled the
person of his ward for a season. The letters of guardianship were afterwards repealed by the
probate court, on petition of the ward, for irregularity in the want of notice. On appeal from an
order of the probate court, allowing the guardian's account—*Held*, That the application was
well enough, especially as the probate court had certified it was by a friend—That the *applica-
tion* gave to the probate court jurisdiction in the case, so that the appointment, though void-
able for the want of notice, and rightfully repealed, was not void:—and that the guardian might
well act under such appointment until his letters were repealed, and had a right to account before
the probate court.

*Held, arguendo,* That if the court from which an appeal is taken has not jurisdiction of the mat-
ter, the appellate court takes none.

THIS was an appeal from a decree of the probate court for
the district of *Fairhaven*, allowing the account of the said *Pal-
mer Cleveland*, as late guardian of the said *Hopkins*, who had, on
inquisition, been adjudged a distracted person.

*Williams*, for the appellant, opened the case, by reading cer-
tified copies, from the probate office, of the records of all the
proceedings touching the guardianship of the appellant, consist-
ing, 1, of the application to the probate court for an inquisi-
tion, which was signed by the said Palmer Cleveland, and one
*David Cleveland*, who did not represent themselves to be either
the friends or relations of the said Hopkins ; 2, The order and
return of the inquisition ; 3, the appointment of the said Palm-
er Cleveland as guardian, and his letters of guardianship ; 4,
the petition of Hopkins to the probate court to have the said
guardianship set aside as irregularly obtained, in this, that the
inquisitors gave him no notice of their proceedings, and an or-
der of the probate court thereon, annulling the guardianship ;
5, the probate order allowing the guardian's account, and ap-
peal therefrom ; and *lastly*, the appellant's objections to the al-
lowance of said account, which were as follows :—Now the said
Ervin Hopkins objects to the allowance of any account which
may be or has been presented by the said Palmer Cleveland, as
guardian to the said Ervin, because he says that the said Palm-
er was not the legal guardian of him the said Ervin.   And the
said Ervin objects to the allowance of any account of the
said Palmer as guardian, because he says, that on the com-
plaint of the said Palmer and one David Cleveland, the judge
of probate for the district of Fairhaven ordered an inquest to
be taken by the selectmen and civil authority of the town of
*Pawlet*, to inquire into the pretended idiocy, lunacy and dis-
traction of him the said Ervin, and the said selectmen and civil
authority proceeded to take the inquisition and adjudge the
said Ervin to be incapable of taking care of himself, and did
certify the same to the judge of probate aforesaid, without giv-

*Rutland,*
*January,*
*1827.*

*Cleveland*
*vs.*
*Hopkins.*

ing any notice to the said Ervin of their then proceedings, and he then and there being wholly ignorant, and having no day to be heard in his defence as to the said pretended idiocy, lunacy and distraction; and upon the inquisition thus taken and certified, the said judge of probate appointed the said Palmer to be guardian to the said Ervin.---And the said Ervin, on the 10th day of January, 1825, preferred his petition to the said judge of probate, stating the before mentioned facts, and praying the said judge to set aside the proceedings, as having been unduly obtained; and thereupon the said judge of probate on, &c. issued a citation to the said Palmer to appear before the court of probate on, &c. at, &c. and show cause why the prayer of the said petitioner should not be granted :---which citation, on, &c. was served on the said Palmer ; and afterwards, to wit, on, &c. the said court of probate, on hearing the proofs and allegations in the petition contained, considered and adjudged that the proceedings of the said inquisition were irregular, and adjudged and ordered that the said Ervin should be discharged and dismissed from the control of his said guardian, as by the records of said court of probate, ready here in court to be shown, appear; all which he is ready to verify.---Wherefore, he prays the judgment of this Court, whether any account ought to be allowed to the said Palmer, &c.

*Bates,* for the appellee, made no answer to the matters contained in the exceptions, and they were, therefore, treated as being demurred to.

It here became a question which party should furnish the copies of the case for the use of the Court.

*Prentiss* and *Hutchinson,* Justices, were of opinion, that it was the duty of the appellant, but *Royce* and the *Chief Justice* held that the appellee must furnish them, he being the party *demurring.*---So *Bates* furnished the copies, and went forward in the argument.

He insisted, 1.   That the expression, *friend,* adopted in the statute, did not restrict the right to make application for the inquisition to any class of individuals connected with the supposed insane person, but it was competent for any individual to make the application, who was *friendly* enough to take upon himself the trouble.   But if this were otherwise, in as much as the record of the proceedings before the probate court stated the application to have been made by the friends of the insane, it was to be presumed that the court were availed of sufficient evidence of that fact. (*Collard* vs. *Crane, Brayt. Rep.* 18.) And that the *application* gave to the probate court jurisdiction of the matter, so that the appointment of the guardian was not void for the irregularity of want of notice, but *voidable* merely.

2.   That the appointment of the guardian was therefore a sufficient authority for him to act, until revoked. (*Allen* vs. *Dundas,* 3 *T. Rep.* 125.)   And consequently, that for the time he acted as such, his accounts are to be settled in the way pointed out by the statute.

Rutland,
January,
1827.

Cleveland
vs.
Hopkins.

*Langdon* and *Williams*, for the appellant, contended, that in as much as the application did not purport to proceed from the friend or relation of the supposed insane person, the probate court could not legally regard it, or make it a foundation for further proceedings in the case---That the inquisition was irregular for want of notice, and the subsequent proceedings consequently void---That one claiming authority by statute over the person and property of another, must show that he has complied with all the requisites of the statute to give him that authority, or his right does not exist, and he is himself a trespasser.

And they cited 1 *Esp. Dig.* 275---14 *Mass. Rep.* 222---2 *Mad. Chan.* 567, 571-6---1 *Con. Rep.* 468---*Fisher* vs. *Beeker, Brayt. Rep.* 75---*Clapp* vs. *Beardsley*, 1 *Aik. Rep.* 168.

HUTCHINSON, J. after stating the case, delivered the following opinion, in which SKINNER, Ch. J. and PRENTISS, J. concurred.

The great point submitted, and now to be decided in this cause, is, whether the plaintiff is entitled to have his reasonable account allowed during the time that he was in fact guardian, and before the repeal of his letter of guardianship, or whether his guardianship was brought about with such irregularity as to be totally void, either in its inception or by retrospect after the repeal, and he left without remedy for his services and expenditures?

During the argument, a suggestion was made as though the plaintiff might have exercised a fraudulent intent in setting this guardianship in motion, he being one of the applicants for the inquisition; but the case presents no circumstance that will warrant the Court in supposing any such thing. We must act upon the presumption that all was done in good faith: for nothing appears to the contrary.

Two objections are raised to the regularity of this guardianship. One is, the want of notice to the defendant, which the statute makes necessary, and for the want of which the letter was repealed. There is no controversy but that this objection is of such validity, that it was correct for the judge of probate, on this account, to repeal the letters. But the effect of this repeal in its full extent must be decided upon all its appendages, observing, in the mean time, the analogy of other cases cited that are in any degree analogous.

Among the circumstances to be considered, we notice that the probate courts are by statute constituted courts of record, and have bestowed upon them entire jurisdiction, within their respective districts, of the subject of appointing guardians over minors, also over idiots, lunaticks, persons *non compos mentis*, and distracted persons; and taking bonds on such appointments for the faithful discharge of duty by such guardians, and especially that they shall render a just and true account of their guardianship, when thereto required; and also to audit and adjust the accounts of such guardians from time to time. Just so of the appointment of administrators, approving wills,

*Rutland,*
*January,*
*1827.*

Cleveland
*vs.*
Hopkins.

&c.:---and all their decisions are subject to an appeal to the Supreme Court within twenty days from any decision or appointment. The statute was undoubtedly intended to make provisions commensurate with all possible cases that could arise. But, though this jurisdiction is thus general, it cannot be exercised over lunaticks and distracted persons, till there is, as we may say, some process, some previous step to bring the subject before the probate court, and ascertain whether the person named in any particular instance has become lunatick or distracted.

Now it is urged, as a second objection, that this previous step was not complied with in the case under consideration; and, therefore, that this guardianship was, in its inception, void, and of course could not be otherwise than void while it continued.

To support this position, it is further urged, that it does not appear as it ought that the application for an order of inquisition was made by any friend or relative. The statute is, that the court shall have power, on the request of any friend or relation of such idiot, &c. to issue a commission to the selectmen, &c. to make inqusition, &c.

It appears by the record, that a written representation was made to the judge of probate, by the plaintiff, Palmer Cleveland, and one David Cleveland, of the conduct of the defendant in several particulars, indicating distraction, and praying that measures might be taken to prevent such evils. But there is nothing said in this writing about their being friends of Hopkins; yet the order of inquisition that issued pursuant to this request, recites it as having been made by Palmer Cleveland and David Cleveland, friends of said Hopkins. The court consider, that by all this it does sufficiently appear that they were friends of Hopkins, and as effectually gives the court jurisdiction as if they had signed as friends, or had been described as such in their written request. The statute has prescribed no form for this request: it does not expressly say that it shall be in writing. Much less does it require that the term friend should be attached to the signature as a description of office. The very communication to the court of probate, if in good faith, and describing evident marks of the lunacy, &c. which is supposed to exist, in a good degree denotes the friendship required; at all events, it is sufficient for the judge to ascertain and decide that the person making the request is such friend as the law requires. It appears, by the above recital, that so much was done in the present case. This is a recital in the probate records of what took place as the act and proceedings of the court. Not so the case of *Fisher* vs. *Beeker, Brayt.* 75. That was the recital by the committee of what they said was done or thought by the selectmen.

The case cited from *Aik. Rep. p.* 168, *Clapp,* administrator, vs. *Beardsley,* only shows that a very defective order of sale from the judge of probate, is insufficient to show a right to sell without something from the records of the court, which would

Rutland,
Jauuary,
1827.

Cleveland
vs.
Hopkins.

show that such facts existed as would warrant the issuing of the order; that is, such facts must appear in the order, or some other way, to make title under the order.

The defendant contends, that, the plaintiff in this case being one of the applicants for the order of inquisition, and being himself afterwards appointed guardian, renders this case, in a measure, similar to a civil process, instituted by him, and carried on under his control, and holds him alike responsible for the consequences of any irregularity. This is the pivot on which must turn the applicability or the reverse of the authorities cited by the defendant. In 1 *Esp. Nisi Prius*, 391, citing 1 *Wil.* 155, and some other authorities, it is said, "that, if a judgment be vacated as unduly obtained, and restitution awarded, the defendant in the first action may bring trespass against the plaintiff; but it is otherwise if the judgment be reversed for error—then no action lies, for it is the fault of the court; but an irregular judgment is the fault of the plaintiff or his attorney. But in such case of an irregular judgment, no action lies against the officer, for he is justified by the writ." There then follows a rule as taken from 2 *Wil.* 384:—"So that the rule of justification under process of any court, is, that if the court has jurisdiction, but their proceedings are irregular, trespass lies against the plaintiff in the action, (that is, after the proceedings are set aside,) but not against the officer; but if the court has no jurisdiction, the officer is liable."

By this rule, and the above authorities, if the court of probate had no jurisdiction to make this appointment, even though the plaintiff should be considered as an officer acting under the process of the court, he can claim no right from the process or authority derived from the court, and under which he acted. And if the court had jurisdiction to make the appointment, under which the plaintiff acted, yet, if the plaintiff, Cleveland, is to be considered as controling, and being responsible for the regularity of the proceedings, the same having been set aside for irregularity, he can now claim nothing under those proceedings; but, if the court of probate thus had jurisdiction, and the defect of regularity is imputable to the court, or any others not the plaintiff, or if the plaintiff is considered as an officer acting under the process of a court having jurisdiction, and for whose proceedings he is not by law responsible, then the plaintiff is justified in whatever he did as a faithful guardian, between the appointment and the repeal—and ought to have his account allowed, so far as the same shall be found to be reasonable; and in such case, if there was any want of fidelity by which Hopkins sustains an injury, he has his remedy upon the guardianship bond given at the appointment of guardian.

If we are right in what is already said, that the request was regular, and laid a proper foundation for the court of probate to issue their order of inquisition, that settles the question, that the court had jurisdiction to act upon this particular subject, and made it the duty of the court to appoint or refuse guardi-

anship, as Hopkins should or should not be found a meet sub-
ject for such appointment.

Now the Court can discover no circumstance in the transac-
tion, nor any part of the statute, which imposes any duty what-
ever upon the Clevelands concerning the proceedings subse-
quent to the presenting their request, or that gave them any
control over such proceedings. It was emphatically the duty
of the court, upon a sufficient request, to issue the order of in-
quisition to the selectmen and civil authority, and it was their
duty to make their inquisition in the presence of Hopkins, or
give him notice to be present, and their return ought to show
this, and the judge ought not to have made the appointment,
until he was in some way certified of the fact that Hopkins was
thus notified. The proceeding in the present case without such
notice, was undoubtedly an inadvertence of the judge, for it
seems he listened to the objection as soon as the discovery was
made, and repealed the letter of guardianship. But it was not
incumbent on the plaintiff to see that the inquisition was regu-
lar. It was not necessary that he should refuse to act under
his letter of guardianship, giving him specifically all the powers
of a guardian, and coming from a court of competent jurisdic-
tion, to whom the request had been regularly made for the in-
quisition, through fear that the judge had neglected some punc-
tilio in the proceedings between the request for the order of
inquisition and the issuing of the letter. It was the act or neg-
lect of the court. As well might a sheriff, who receives an ex-
ecution from a justice of the peace for an amount within his ju-
risdiction, and who knows that the writ in the case was regu-
larly served and returned, be required to see to it that no dis-
continuance of the suit had intervened to render the judgment
and execution void. Any other person might have been ap-
pointed guardian as well as the plaintiff. He would have been
a stranger to all the proceedings till he received his letter and
gave his bond.---Or, some other person might have made the
request, and the present plaintiff been a stranger to all the pro-
ceedings till the appointment itself; and, in both cases, the ef-
fect of the appointment and the after repeal would have been
exactly the same as they now are. It must be considered good
while in force.---*See* 1 *Con. Rep.* 467, *Brown* vs. *Lanman, ad-
ministrator.---Also see* 3 *T. Rep.* 125, *Allen* vs. *Dundas,* where
payment of a debt to the executor under a forged will, approv-
ed, was good for the debtor.

The case relied upon by the defendant in 14 *Mass. Rep.* 222,
*Chase* vs. *Hathaway,* was an appeal from the decision of the
court of probate, making an appointment of a guardian without
notice to the ward, and the decision of the Supreme Court on-
ly put an end to the guardianship; and the strong expression
of the judge, that the appointment was void, may have had,
and must have been intended to have reference to the subject
then before the court; that is, void in such a sense that it ought
to be set aside. But we can have no assurance from this, what

the same judge would have said, if the subject before him had
been the allowance of the account of the guardian, after his ap-
pointment, and before the appeal was taken.

The cases, or rather principles, cited from 2 *Mad. Ch.* relate
to the practice in England, and apply only to show the necessi-
ty of notice, which our statute also requires, as before mention-
ed.

There seems, therefore, no way in which the plaintiff can be
considered as a party in a suit, and responsible for the regular-
ity of the proceedings before the court of probate.    He appears
more in the light of a sheriff receiving a precept from a court
of competent jurisdiction; and he ought to be protected in
what he did in good faith until the repeal of his guardianship,
and ought, before some tribunal, to have his accounts fairly set-
tled.

This leads to the question, whether the probate court was
the proper tribunal?    For if not, this Court has no power on
appeal from that court.    The statute, before referred to, gives
all proper powers to the court of probate, to audit and pass the
accounts of guardians, and keep records of the same; and the
bonds are deposited as security that the guardian shall render
his account, and pay over the balance, as he shall be ordered
by the probate court.    In addition to all this, the 105th sec-
tion of the probate act provides, that, after the ward arrives at
full age, or is otherwise discharged from his guardianship, if
dissatisfied with the accounts thus passed, he may sue the bond,
and be admitted to falsify the accounts before passed by the
judge.    There is no distinction made in the statute between
the different modes of obtaining the discharge.    And a dis-
charge by the repeal comes as fairly within the spirit, as well
as the letter of the statute, as in any other way.    Indeed, it
would be a solecism, that the law should require of the plain-
tiff a bond on his becoming guardian, and he complies, and gives
a bond which binds him to render his account before the court
of probate, and yet he should be driven elsewhere with his ac-
count, and not permitted to act in conformity with the requisi-
tions of the bond he has been required to give.    It would be a
solecism, of which the defendant might well complain, if the
plaintiff were permitted to go elsewhere with his account, and
deprive the defendant of the benefit of the bond, to secure the
rendition of accounts and payment of the balance found due.

We consider the probate court had jurisdiction over this ac-
count; and the appellant must account.

ROYCE, J.    I differ from the opinion just expressed, as to
*where* the right to exercise jurisdiction over the person and
property of the appellant in this case, arises.    The opinion
places it upon the fact of *application made* :---I consider it arises
upon the fact of *office found*.    What, then, is the office found in
this case?    It is admitted that it is defective; and I consider
that it is defective in substance, and therefore as none at all.

It appears to me that the reasoning of the Court leads to this,— that the probate court had jurisdiction because it *took* jurisdiction. I deem it my duty, therefore, to express my dissent from the opinion.

*R. B. Bates,* for the appellee.

*C. Langdon* and *C. K. Williams,* for the appellant.